## Mackarus Estate (No. 3)

Before KLEIN, P. J., BOLGER, LEFEVER, SAYLOR, SHOYER and BURKE, JJ.

*Sidney Salkin,* Assistant United States Attorney, and *Drew J. T. O'Keefe,* United States Attorney, for United States of America.

*Ostroff & Lawler*, for claimants.

*Fox, Rothschild, O'Brien & Frankel*, for accountant.

*Herbert W. Salus, Jr.* and *Melvin E. Soll*, Special Assistant Attorneys General, for Commonwealth.

## ADJUDICATION

BURKE, J., September 20, 1965.—Samuel Mackarus died on January 5, 1962, intestate, and letters of administration on his estate were granted to Provident Tradesmens Bank and Trust Company (now Provident National Bank) on March 21, 1962, by the register of wills. . . .

The administrator's account, and the supplement thereto, show a combined balance of principal and income of $88,282, derived from disability compensation and insurance following decedent's service in the United States Army in World War I.

Several claimants appeared at the audit to claim the fund:

(a) The United States, as trustee for the General Post Fund, claiming under Act of Congress of June 25, 1910, as amended, 36 Stat. 736, 38 U. S. C. A. §5220.

(b) The Commonwealth of Pennsylvania, claiming under section 1314 of The Fiscal Code of April 9, 1929, P. L. 343, or under the Iron Curtain Act of July 28, 1953, P. L. 674.

(c) Maria Korol Budnik and Marina Korol Budnik, claiming under the Intestate Act of April 24, 1947, P. L. 80, as decedent's nieces and next of kin.

It appears that decedent was born in the Village of Datyn, Kowal District, Volynskaya Province, and emigrated to the United States prior to World War I. During the war, he served in the United States Army. Owing to mental illness he became a patient in the United States Public Health Service Hospital in Philadelphia, and on February 28, 1921, the Court of Common Pleas of Philadelphia County, sur petition, ad-

judged him incompetent and appointed the Commonwealth Title Insurance and Trust Company (now Provident National Bank) guardian of his estate. He remained hospitalized in care of the Veterans' Administration continuously until his death in 1962, at the Veterans' Administration Hospital in Cincinnati, Ohio.

It further appears that the Veterans Administration in 1926 caused an inquiry to be made by the American Consular Service into the financial dependency of decedent's wife, Aleksandra, and his mother, Motrona Makarus, residents of Datyn, and ascertained that his wife Aleksandra Makarus, nee Budnik, whom he had married on February 4, 1913, had died in Datyn in 1918, and that his son, Piotr, born July 1, 1914, had died in Datyn in 1919. Decedent's mother, Motrona Makarus, however, was living in Datyn. The inquiry also developed that decedent had a brother, Filip Makarus, a paralytic, and a sister, Marja, married to Mojsiej Korol.

The Act of Congress under which the United States claims the fund provides that whenever any veteran shall die while being furnished care in any hospital by the Veterans' Administration, and shall not leave surviving him any next of kin entitled under the laws of his domicile, to his personal property, all such property not disposed of by will or otherwise shall immediately vest in the United States as trustee for the sole use of the General Post Fund.

Section 1314 of the Act of 1929, supra, under which the Commonwealth claims the fund, applies: (a) where moneys have not been awarded, i.e., where there is a possibility of heirs but their identities have not been established, or (b) where moneys have been awarded but the whereabouts of the heirs are unknown, i.e., where the identities of the heirs but not their whereabouts have been established.

Maria Korol Budnik and Marina Korol Budnik claim as decedent's next of kin under the Intestate Act of 1947. Claimants are residents of Volynskaya Province, Ukraine, U. S. S. R., and appear through their counsel, Ostroff, Lawler & Baker, Esqs. Counsel was designated to appear for claimants by the New York law firm of Wolf, Popper, Ross, Wolf & Jones, which is acting under a bilingual power of attorney dated September 17, 1962.

If decedent was survived by next of kin, the claim of the United States falls by the express terms of the Act of Congress under which it claims. On the other hand, the claim of the Commonwealth of Pennsylvania presupposes that decedent left him surviving next of kin who are entitled to his estate under the Intestate Act of 1947, but whose identity or whereabouts are unknown. The question for determination, therefore, is whether decedent was survived by next of kin entitled to his estate, and, if so, whether claimants are the persons entitled thereto.

Claimants' evidence of kinship is entirely documentary. It consists of documents purporting to be copies of public records of births, marriages and deaths, offered in evidence to eliminate other kin closer in degree than claimants and to establish their own relationship to decedent. English translations of these documents were submitted with the originals.

To prove their claims, counsel for claimants offered in evidence the following documents:

(1) Certificate showing the marriage of Vasily G. Makarus and Motrona Onufriivna at Volynskaya Province, Ukraine, in 1884.

(2) Certificate showing the birth of Semen V. Makarus at Volynskaya Province, Ukraine, on February 2, 1890—father, Vasl G. Makarus, mother, Motrona O. Makarus.

(3) Certificate showing the birth of Maria V. Maka-

rus at Volynskaya Province, Ukraine, on November 14, 1894—father Vasil G. Makarus, mother, Motrona O. Makarus.

(4) Certificate showing the death of Vasil G. Makarus at Volynskaya Province, Ukraine, in 1913.

(5) Certificate showing the death of Motrona O. Makarus at Volynskaya Province, Ukraine, on December 23, 1933.

(6) Certificate showing the marriage of Maria V. Makarus to Moisei L. Korol at Volynskaya Province, Ukraine, in 1921.

(7) Certificate showing the birth of Maria M. Korol at Volynskaya Province, Ukraine, on August 21, 1923 —father Moisei L. Korol, mother, Maria V. Korol.

(8) Certificate showing the birth of Marina M. Korol at Volynskaya Province, Ukraine, on March 5, 1928—father Moisei L. Korol, mother Maria V. Korol.

(9) Certificate showing the death of Maria Makarus Korol at Volynskaya Province, Ukraine, on January 15, 1959.

(10) Certificate showing the marriage of Marina Korol and Grigorii M. Budnik at Volynskaya Province, Ukraine, on October 14, 1948.

(11) Certificate showing the marriage of Maria Korol and Mikola A. Budnik at Volynskaya Province, Ukraine, on November 14, 1954.

(12) A declaration dated September 12, 1963, designated "Act of Witnesses Testimony", in which two persons, Grigory E. Sakharchuk and Filipp M. Doroshuk, residents of Datin, Volynskaya Province, Ukraine, declare that they have lived all their lives in the same village in which the Makarus family lived; that decedent, Samuel Makarus, was the son of Vasily G. Makarus and Motrona Makarus; that his parents had two children, Samuel, decedent, and Maria M. Korol, his sister; that decedent's father, Vasily, died in 1913; that Motrona, his mother, died in 1933, and that his

sister Maria died in 1959, survived by two children, Maria Korol Budnik and Marina Korol Budnik, claimants.

To establish their identity as decedent's nieces and next of kin, claimants offered in evidence the following documents:

(13) Certificate that Maria Korol Budnik appeared on September 17, 1962, at the First Lutsk State Notarial Office and that her identity was ascertained.

(14) Certificate that Marina Korol Budnik appeared on September 17, 1962, at the First Lutsk State Notarial Office and that her identity was ascertained.

In addition, the power of attorney from claimants to Wolf, Popper, Ross, Wolf & Jones, Esqs., dated September 17, 1962, was offered in evidence for the dual purpose of showing their authority to act for claimants and as well to prove their identity.

All of these documents, authenticated by the American Consul in Moscow, U. S. S. R., and their respective translations from Russian into English, were marked for identification, offered in evidence, and are part of the record.

No witnesses appeared in court to testify in support of the claims. On May 21, 1965, counsel for claimants presented a petition for citation to be directed to all adverse parties to show cause why a commission should not issue or letters rogatory be allowed to obtain the testimony of claimants at their place of residence in Datyn, Korval, Volynskaya Province. The prayer of this petition was denied for the reasons set forth in a separate opinion this day filed.

One claiming as next of kin has the burden of proving kinship to decedent by a fair preponderance of the credible evidence: Link's Estate (No. 1), 319 Pa. 513; Davis Estate, 365 Pa. 605; Manfredi Estate, 399 Pa. 285; Bokey Estate, 412 Pa. 244. In Link, the court held, at page 522, that: "The evidence to sustain rela-

tionship must bear on every material feature necessary to support a finding of kinship. It must be grounded on a reasonable certainty and come from witnesses whose truth and candor are not questioned. To defeat the claim of the Commonwealth the evidence must be so clear, precise and definite in quality and quantity as to satisfy the court below that the relationship claimed existed".

Are the various documents, standing alone, sufficient evidence to prove the kinship of claimants and their identity as decedent's nieces?

Documents 1 to 11, inclusive, described as copies of Russian public records and designed to prove the relationship of claimants to decedent, were composed under the supervision of officials of the U.S. S. R. for the purposes of this litigation. Obviously, these documents are not copies of original records on file, but rather documents prepared from "vital statistic data" obtained from other sources. Such documents are not competent evidence of the facts which appear therein. In Malika Estate, 31 D. & C. 2d 736, this court held that documents post litem motam will not be accorded evidential recognition unless the court is absolutely certain that the source of information is untainted and the facts upon which the record is based have been established beyond doubt as unimpeachable, impartial and trustworthy.

Where the documents depend for their authenticity upon officials or functionaries who must act under police-State pressures, no such convincing assurance is possible. We can place no reliance upon documents prepared by such officials, and governmental verification does not add to the authenticity or validity of the documents.

Aside from the records of the Veterans' Administration, there is no evidence that decedent's wife Aleksandra died in 1918, or that his son Piotr died in 1919.

Nor is there any evidence that decedent's brother Filip, who was living in 1926 when the Veterans' Administration inquired about decedent's relatives, did not survive decedent. It was incumbent upon the United States to prove by competent evidence that decedent was survived by no such kin, and upon the alleged nieces to show that decedent was survived by neither spouse nor issue or other persons of closer relationship: Bokey Estate, supra.

Documents 12, 13 and 14 were offered to establish the identity of claimants. All are ex parte affidavits and clearly inadmissible. The right of confrontation of witnesses is most important in our jurisprudence; it affords the opposite party the opportunity to test by crossexamination the reliability of the evidence given and enables the court, through its opportunity to see and observe the witness, to better test the credibility of the witness: Bokey Estate, supra; Martinzik Estate, supra. The objection of the Commonwealth and of the United States to the admissibility of these documents is sustained.

It may well be that claimants are in fact the children of decedent's sister, Maria Makarus Korol, but the documents offered to prove their kinship, while authenticated by the American Consul in Moscow, are suspect and, therefore, not convincing and satisfying evidence of the facts which appear therein. But even if the Court could extend to these documents full faith and credit, claimants have failed to prove by competent evidence that they are the same persons as the children of decedent's sister Maria, if in fact she left children her surviving. It would be unfair to the United States to find at this time that claimants are decedent's next of kin and thereby exclude the Government's claim. On the other hand, it would be unjust to preclude claimants from a fair opportunity later to present competent evidence of kinship and identity, if some day they should be free to do so.

I conclude that claimants at this time have failed to meet the burden which the law places upon them to establish their kinship by a fair preponderance of trustworthy and satisfying evidence and, likewise, have failed to prove that they in fact are the same persons as the children of decedent's sister Maria Makarus Korol purported to have survived her. I further conclude that the interest of justice in this estate will be served best by awarding the balance for distribution to the Commonwealth of Pennsylvania as custodian under section 1314 of the Act of 1929, to be held until such time as claimants are free to prove kinship and identity by competent evidence or the court is satisfied that such proof is impossible, when the claim of the United States may be reconsidered. Payment under the Act of 1929 will preserve the rights of all parties in interest. . . .

And now, September 20, 1965, the account is confirmed nisi.

### Opinion sur Exceptions to Adjudication

Lefever, J., November 10, 1966.—The United States of America has filed exceptions to the adjudication of Judge Burke, in which he awarded the net principal and income of the estate of this deceased United States Army veteran, totalling $82,782, to the Commonwealth of Pennsylvania under section 1314 of The Fiscal Code of April 9, 1929, P. L. 343, "without escheat, and without prejudice to the rights of all claimants in future proceedings to establish their claims according to law". The exceptions are grounded upon the argument that the United States of America, as trustee of the General Post Fund, is entitled to an award of the deceased veteran's estate under the Act of Congress of June 25, 1910, 36 Stat. 736, as amended, 38 U. S. C. A. §5220, which provides that all the property of any veteran who dies while a patient in a veterans' hospital while being furnished care and treat-

ment by the United States Veterans Administration, and who does not leave surviving him any spouse, next of kin or heirs entitled to his personal estate, shall become the property of the United States as trustee for the sole use and benefit of the General Post Fund.

This precise question was decided by unanimous opinion of this court, written by Judge Bolger, in Martinzik Estate, 25 D. & C. 2d 701 (1962). There, as here, the documentary proof presented was not sufficient to warrant the auditing judge in concluding that the identity of the alleged next of kin, resident behind the iron curtain of Russia, had been established, but there was strong indication that, when further proofs were available, their identity would be established. The court en banc directed an award similar to that made by the learned auditing judge in the instant case.

There is no need to repeat the reasons stated by this court in Martinzik Estate, supra, and by the learned auditing judge in the instant case. We adopt them here.

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.