## Wooster Products v. Magna-Tek
*[Cite as 2 AOA 501]*

*Case No. 2462*
*Wayne County, (9th)*
*Decided April 25, 1990*

*R.C. 1302.01*

*Mark J. Skakun and Reginald S. Kramer, Attorneys at Law, 201 E. Liberty St., Wooster, OH 44691 for Plaintiff.*

*David N. Spector, Attorney at Law, 225 N. Market St., Wooster, OH 44691 for Defendants. Richard Sternberg, Attorney at Law, 905 CitiCenter, 146 S. High St., Akron, OH 44308 for Defendants.*

BAIRD, J.

This cause came before the court upon the appeal of Wooster Products, Inc., from an award of $100,000 for the appellees, Magna-Tek, Inc., Magna-Tek Components, Inc., and the corporations' founders and officers, Robert F. Baker, Robert C. Lovatt, and Robert Possehl, on their counterclaim for breach of contract.[1]

Wooster Products, an Ohio corporation, filed a complaint against Magna-Tek, Inc., a New Jersey corporation, claiming that Magna-Tek breached a contract to develop a videotape manufacturing plant in India when it entered into a collaboration agreement with an Indian company in violation of the exclusivity clause of the contract. Wooster Products further alleged that Magna-Tek fraudulently represented that it had adhered to the terms of the contract, thus inducing the plaintiff to continue its plans for the installation of the plant in India. Magna-Tek counterclaimed that Wooster Products breached the agreement by failing to carry out its contractual obligations.

A ten-day jury trial resulted in a defense verdict for Magna-Tek on both counts of the complaint and a verdict for Magna-Tek on its counterclaim. The following facts developed at trial.

In 1980, Jim Arora, a resident alien who immigrated from India, purchased Wooster Products, a corporation specializing in the manufacturing of stair treads, anti-slip coating, and safety steps. Soon after purchasing the company, Arora became interested in developing a business in India with an American collaborator. In the spring of 1984, Arora began negotiating with Robert Baker, president of Magna-Tek, a manufacturer of videotape, for the installation of a videotape manufacturing plant in India. During these negotiations, Arora learned that Magna-Tek had commercial dealings with a Hong Kong businessman, David Chan, who headed a conglomerate in the British colony called the Acme Group of companies. The nature and extent of Chan's association with Magna-Tek remained a point of contention among the parties throughout the trial. Wooster Products contended that not only was Chan a fifty-percent owner of Magna-Tek, but that he also had the authority to enter into contractual arrangements on behalf of the corporation. Magna-Tek, in contrast, claimed that Chan merely provided the financial backing that enabled Magna-Tek to operate.

In his initial talks with Magna-Tek, Arora also learned that in 1982 Magna-Tek had been talking to an Indian company, Garware Plastics & Polyester Ltd. (Garware), for the installation of a videotape plant in India. According to Magna-Tek's testimony, the business deal with Garware went no further than the execution of a memorandum of understanding; no formal commitment was reached.

On May 1, 1984, Wooster Products and Magna-Tek came to an agreement in which Magna-Tek promised to furnish Wooster Products with the necessary technology and equipment to establish a videotape manufacturing business in India. Further, Magna-Tek granted Wooster Products the exclusive right to use its technology and to sell 1/2-inch videotape throughout the subcontinent of India. In return, Wooster Products promised to pay $2.1 million in various installments.

In February of 1985, Magna-Tek sent to Wooster Products a breakdown of the costs associated with the contract. The cost of equipment was listed at $1.6 million and the cost to transfer the technology was listed at $500,000. Magna-Tek informed Wooster Products that updated equipment would cost an additional $150,000. The sending of this letter seemed to mark the beginning of the disintegration of the companies' business relationship.

During the months of February and March, Magna-Tek unsuccessfully attempted to modify the contract by offering to forego charging for the updated equipment, if Wooster Products would delete the exclusivity clause in the contract. During the same time period, Magna-Tek notified Wooster Products that it had

received a "telex" from Garware to the effect that it was ready to do business with Magna-Tek. Magna-Tek, however, assured Wooster Products that it was not interested in dealing with Garware.

In June of 1986, while he was in India, Arora acquired a private debenture offer by Garware advertising that Garware would by the first company in India to manufacture videotape, "in collaboration with Magna-Tek, an acknowledged world leader in the field of magnetic media." When shown the offer, Possehl and Baker denied that Magna-Tek was involved with Garware. Baker told Arora that the name "Magna-Tek" appearing in the debenture offer was a different company than Magna-Tek, Inc., and that perhaps Chan had been using the name. Baker testified that Arora seemed satisfied with this explanation.

Arora flew to India in September to notify the government that Wooster Products intended to open a letter of credit for Magna-Tek so that equipment could be shipped. Arora testified that during this trip he discovered that David Chan, allegedly on behalf of Magna-Tek, signed a collaboration agreement with Garware to sell its technology and equipment. The agreement was executed in July of 1985 and admitted at trial as Exhibit EE. Arora also learned that Possehl on behalf of Magna-Tek had signed a document that was labeled "contract"on May 1, 1985. The document purported to sell to a company owned by David Chan, "the technical know how (sic) for manufacturing audio, video, computer and floppy disk media" for five million dollars.

In October of 1986, Arora confronted Possehl and Lovatt about these matters. Lovatt denied having any knowledge of the document Chan and Possehl had signed. At trial, Possehl admitted that he signed the document, but testified that it constituted a proposal rather than a contract and that the deal with Chan was never consummated. Both Possehl and Lovatt claimed that they were unfamiliar with the collaboration agreement between Garware and Chan. Baker testified that, as president of Magna-Tek, he never authorized Chan to enter into any agreements on Magna-Tek's behalf in regard to any business transaction occurring in India.

In late October, Baker attempted to contact Arora to discuss with him the strained relationship that had developed between the two companies. Arora refused to talk to him unless Lovatt and Possehl were also present. Baker testified that he informed Arora that such a request was impossible because Possehl was in Hong Kong. Shortly thereafter, Wooster Products filed its breach of contract action. At the time of the suit, Wooster Products had paid $630,000 of the $2.1 million contract price. While the operating license from the government of India had not been issued, the plant facility was in its final stage of completion. Magna-Tek was ready to ship the equipment but was waiting for Wooster Products to open the letter of credit.

Keeping the above factual scenario in mind, this court now turns to reviewing Wooster Product's assignments of error.

### ASSIGNMENT OF ERROR I

"The trial court erred in denying Wooster Products' motion for letters rogatory or letters of request for use in obtaining depositions in Hong Kong."

In its first assignment of error, Wooster Products complains that the trial court abused its discretion by denying its pre-trial motion for letters rogatory. Wooster Products moved the court to issue letters rogatory to the judicial authorities in Hong Kong, based upon its belief that agents of the Acme Group of Companies had information relevant to the issues in the case. Magna-Tek opposed the motion, arguing that the motion came after the discovery cut-off date and that it sought information that was irrelevant, burdensome, and easily procured elsewhere. Although the trial court did not delineate its reasons for denying Wooster Products' motion in its judgment entry, such a ruling was proper when viewed within the context of the extensive discovery which began in 1986 and concluded in 1988.

Courts have inherent authority to issue letters rogatory. *B & L Drilling Electronics* v. *Totco* (W.D. Okla. 1978), 87 F.R.D. 543, 544-45. A letter rogatory is defined as:

"the medium, in effect, whereby one country, speaking through one of its courts, requests another country, acting through its own courts and by methods of court procedure peculiar thereto and entirely within the latter's control, to assist the administration of justice in the former country; such request being made, and being usually granted, by reason of the comity existing between nations in ordinary peaceful times." *Id.* at 544-545.

The issuance of letters rogatory falls within the broad discretion of the trial court. *In re Estate of Mackaru* (1968), 431 Pa. 585, 246 A.2d 661, 666. In deciding whether to issue letters

rogatory, the court must look at the circumstances of the case and weigh the need of the moving party for the information against the burden placed upon the opposing party and the delay in proceedings occasioned * the issuance of the letters. *In re Garrett's Estate* (1939) 335 Pa. 287, 6 A.2d 858.

In the instant case, the court originally scheduled the trial to begin on November 2, 1987, with discovery to be completed by October 16. Prior to the October 16 deadline Wooster Products moved the trial court to issue * rogatory to India, which the trial court granted. Upon Wooster Products' request, the trial court then proceeded to continue the trial to May 23, 1988. On November 24, 1987, Wooster Products again moved the court to issue letters rogatory, but this time requested the court to issue them to Hong Kong. While the motion was pending, Wooster Products sought a continuance of the May 23 trial date. By a journal entry dated May 16, 1988, the court granted the continuance, but limited the scope of Wooster Products' discovery. The court noted that Wooster Products could not use the continuance to engage in any further discovery but could complete the discovery that was in progress at the time of the court's order. The court then went on to list under what circumstances the discovery could continue; the court did not include the discovery of information in Hong Kong through the letters rogatory process. On June 30, 1988, the trial court refused to issue the letters rogatory.

A trial court is imbued with broad discretion in controlling the scope and extent of discovery. *Stegawski* v. *Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App. 3d 78, 85. In denying the motion, the trial court properly exercised its inherent power to control the discovery process. The extensive discovery conducted by the parties and the relatively late request to begin the letters rogatory process in Hong Kong outweighed Wooster Products' need for the information. Appellant's first assignment of error is not well taken.

## ASSIGNMENT OF ERROR II

"The trial court erred in instructing the jury that it was a question of fact as to whether the statutory provisions of Ohio's Uniform Commercial Code applied to the contract between Wooster Products and appellees."

In its second assignment of error, Wooster Products contends that the trial court committed prejudicial error when it allowed the jury to decide whether Article Two of the Uniform Commercial Code governed the May 1, 1984, contract between Magna-Tek and Wooster Products. On the issue of breach of contract, the trial court instructed the jury in the following way:

"***.

"In considering the evidence on the issue of breach of contract, you are further instructed to determine whether the predominate (sic) factor and purpose of the May 1st, 1984, contract was the rendition of labor or service, with goods incidentally involved, or whether the contract was for the sale of goods, with labor or service incidentally involved.

"Goods means all things, including specially manufactured goods, which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action.

"If you find by a preponderance of the evidence that the predominate (sic) factor and purpose of the contract relates to the sale of goods, with labor or services incidentally involved, then you are further instructed that the law of Ohio places an obligation on the parties to a contract to act in good faith with one another.

"Good faith between the parties here means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. However, if you find that the predominate (sic) factor and purpose of the contract was the rendition of labor or service, with goods incidentally involved, then the law of Ohio does not place an obligation on the parties to a contract to act in good faith with one another as good faith is defined above."

"***."

Wooster Products argues that the trial court should have decided the applicability of Article Two as a matter of law.

Article Two of the Uniform Commercial Code as codified in R.C. Chapter 1302 applies only to transactions in goods. *Allied Industrial Service Corp.* v. *Kasle Iron & Metals* (1977), 62 Ohio App. 2d 144, 146. Where a contract is for both goods and services, Article Two will apply where the predominant factor and purpose of the contract is the sale of goods with services incidently involved. Id. at 147; See also *Langhals* v. *Holt Roofing Co.* (1988), 47 Ohio App. 3d. 114, 116.

Ohio courts have yet to address the issue of whether it is improper for the trial court to submit to the jury the issue of whether a particular transaction is a contract for the sale

of goods within the scope of Article Two. Generally, other jurisdictions have held that whether a mixed contract is predominantly one for the sale of goods is a factual question to be determined by a review of the contractual language and the circumstances surrounding its formation and contemplated performance. *Baker* v. *Compton* (Ind. App. 1983), 455 N.E. 2d 382, 386; *Farm Automation Corp.* v. *Senter* (1981), 84 App. Div. 2d 757, 443 N.Y. Supp. 2d 765, 766; *Glover School & Office Equip. Co., Inc.,* v. *Dave Hall, Inc.* (Del. Super. 1977), 372 A. 2d 221, 223; *Prince* v. *Spire Corp.* (Mol App. 1979), 584 S.W. 2d 108, 111. Where, however, there are no disputed facts that raise issues to be decided by the jury, it is proper for the trial court to rule as a matter of law on whether the contract is covered by Article Two. *United States* v. *City of Twin Falls* (C.A. 9 1986), 806 F.2d 862, 870.

In the case *sub judice,* the May 1, 1984, agreement purported to sell for $2.1 million:

"***.

"(a) All plant machinery and equipment necessary or useful in the production of 1/2" video tape in India;

"(b) All technology and expertise necessary or useful in operating said plant machinery and equipment so as to achieve the results desired, namely; the manufacture, sale, and distribution of quality video tape.

"(c) Two of MTCI's three principals will attend the manufacturing site in India from the date the plant and machinery are on site until the production of 1/2" video tape is running smoothly producing tapes which are compatible with all video tape systems (PAL, MTSC, SECAM) which tapes are of high quality.

"(d) Training of Products' stateside and Indian personnel, on site, necessary to the proper operation and maintenance of the plant and machinery, testing procedures, quality maintenance, fault finding and remedy. ***."

On February 22, 1985, Magna-Tek sent Wooster Products a breakdown of the costs. The equipment was priced at $1.6 million and the technology was priced at $500,000. Baker, president of Magna-Tek, testified that Magna-Tek did not own the equipment, but that it merely assembled the equipment that the Acme Group of Companies shipped to its facility.

It is impossible to discern from reviewing the language of the May 1 contract whether the sale of machinery predominates over the sale of technology, for the contract does not proportion the costs between the two. The letter in which Magna-Tek separately set forth the costs of the equipment and technology seems to support the conclusion that the contract is predominantly one for the sale of goods. Baker's testimony that Magna-Tek merely assembled the equipment suggests that the main aspect of the contract is the sale of technology. Thus, based upon the evidence presented at trial, a jury question arose as to whether the predominant aspect of the transaction between Magna-Tek and Wooster Products was the sale of equipment or the sale of technology. The trial court did not err when it submitted the issue to the jury. Appellant's second assignment of error is not well taken.

### ASSIGNMENT OF ERROR III

"The trial court erred in refusing to admit into evidence the packet of materials marked *Plaintiff's Exhibit U.,* representing documents from India relating to the Garware videotape plant project."

Wooster Products claims that the trial court erred by failing to admit Exhibit U, which consisted of correspondence between Garware and the government of India, correspondence between Garware and Magna-Tek, various agreements signed by Garware and Magna-Tek, and copies of Garware's alleged license to operate a videotape plant in India. Wooster Products attempted to have the twenty documents contained in Exhibit U admitted as foreign documents that were contained in the file of the Ministry of Industry, which Arora saw on his trip to India in October of 1986. On direct, Arora was able to recognize the front pages of eight of the twenty documents. Further, it is unclear from his testimony whether he actually read the documents or just glanced at them while they were lying on a government official's desk. He testified that he did not bring any of the documents back with him from India but that they were sent to him from the Indian government. No evidence was presented besides Arora's testimony that the documents came from the government of India.

Upon an evidentiary hearing held outside the presence of the jury, the trial court found that the documents could not be admitted as documents contained within the government of India's file. The court did, however, admit a few of the documents contained in Exhibit U as separate exhibits. Exhibits U1 consisted of a memorandum of understanding executed by Garware and Magna-Tek in 1982, and was allowed into evidence as Exhibit BB. A description of Magna-Tek's operation, while not admitted as part of the government of India's

file, was admitted as Exhibit CC. Parts of Exhibit U8, an agreement between Garware and Magna-Tek and parts of U11, a contract signed by Chan and Possehl, were admitted respectively as Exhibit EE and Exhibit O.

The other documents contained in Exhibit U lacked independent indicia of reliability. Wooster Products failed to identify the documents as foreign documents under Evid. R 902(3), or by other proper means of authentication as noted in Evid. R. 901. Because Wooster Products offered the documents to prove Magna-Tek had sold its technology to Garware, they were offered as proof of the matter asserted and thus were documents containing hearsay statements in violation of Evid. R. 801.

The trial court has broad discretion to allow or disallow a given exhibit. *Avon Lake* v. *Anderson* (1983), 10 Ohio App. 3d 297, 299. Such discretion will not be disturbed unless an abuse of discretion can be shown. *Id.* The admissibility of Exhibit U was discussed thoroughly among the court, Wooster Products, and Magna-Tek at various points in the trial. Thus, Wooster Products had every opportunity to show the reliability of the documents. Because such reliability was not established, the trial court properly excluded the exhibit. Appellant's third assignment of error is not well taken.

### ASSIGNMENT OF ERROR IV

"The trial court erred in refusing to admit into evidence Plaintiff's Exhibit DD, representing the annual returns of Multi-Sonic Tape, LTD. from 1980 through 1988."

Wooster Products asserts that the trial court should have admitted the annual returns of Multi-Sonic Magnetic Tape LTD., a company organized under the laws of Hong Kong. The returns covered the years 1980 through 1987 and list Baker and Possehl as shareholders and directors of Multi-Sonic along with David Chan. Wooster Products argues that the returns should have been admitted as proof that Magna-Tek and Acme were actively engaging in a competing business venture, Multi-Sonic, that violated the exclusivity provisions of the contract between Wooster Products and Magna-Tek.

Baker and Possehl were questioned in Wooster Products' case in chief and were cross-examined during Magna-Tek's presentation of evidence. Both men testified that they did not know that their names were listed on the corporate returns. Both denied any knowledge of Multi-Sonic's existence. After the completion of

the plaintiff's case, the trial court ruled that Wooster Products could offer the exhibit in rebuttal if Magna-Tek denied an ongoing relationship with Chan. At the end of the trial, the court determined that the evidence was too prejudicial and thus would be excluded.

The annual returns of Multi-Sonic were properly excluded by the trial court, for the returns were not relevant to the determination of the issues in the case. To be relevant, evidence must tend to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Brown* v. *Cleveland* (1981), 66 Ohio St. 2d 93, 97. If what Wooster Products attempted to establish by the exhibit was true -- that Magna-Tek was actively engaged in business with Acme -- such a proposition did not make it more or less probable that Magna-Tek had violated the exclusivity clause in the contract. The clause provided Wooster Products with the exclusive right to Magna-Tek's technology only in the subcontinent of India. It is within the trial court's sound discretion to decide what evidence is relevant and whether it will assist the trier of fact in determining a fact in issue. *Van Pham* v. *Redle* (1985), 29 Ohio App. 3d 213, 215. Here, the court did not abuse its discretion in excluding the exhibit.

Even if relevant, the trial court correctly found that the Exhibit's prejudicial impact outweighed its probative value. See *Browns* v. *Best Products Co.* (1985), 18 Ohio St. 3d 32, 35-36. Evidence can be prejudicial where it unduly distracts the jury from the main issues of the case. *McCormick, Evidence* (3 Ed. Clearly Ed. 1984), 546, Section 185. In the instant case, the returns, listing two officers of Magna-Tek as shareholders and directors, might lead the jury to think that because Magna-Tek was somehow dealing with Multi-Sonic it was not upholding its contractual obligations. Thus, appellant's fourth assignment of error is not well taken.

### ASSIGNMENT OF ERROR V

"The trial court erred in refusing to admit into evidence *Plaintiff's Exhibit WW*, representing bank records of Multi-Sonic Magnetic Tape, LTD."

The trial court properly excluded Exhibit WW, 1988 banking records of Multi-Sonic from the Yien Yieh Bank of Hong Kong. Wooster Products contends that the records reveal that large sums of money were being transferred into and out of Multi-Sonic's account in the months

preceding trial. These large debit transactions were offered to establish that Acme's and Magna-Tek's business relationship continued through the trial.

Like the annual returns, these bank records are irrelevant and highly prejudicial. Wooster Products failed to establish any connection between Multi-Sonic's bank transactions and Acme's relationship with Magna-Tek. Furthermore, the banking transactions took place two years after Magna-Tek and Wooster Products had ended their contractual relationship. Thus the transactions were too remote to have any probative value. Appellant's fifth assignment of error is not well taken.

### ASSIGNMENT OF ERROR VI

"The trial court erred in refusing to admit into evidence the second page of *Plaintiff's Exhibit M.* representing a partial copy of Garware's videotape manufacturing license."

Exhibit M consists of two pages stapled together. The first page is a copy of a "telex" from David Chan to Magna-Tek, which was admitted into evidence. The second page was a partial copy of a document from the government of India that Wooster Products claims to be a copy of Garware's license to operate a videotape plant in India. At trial, Magna-Tek denied that the government document was attached to the "telex" it received from Chan. Further, the "telex" made no reference to the attached document.

The second page of Exhibit M was properly excluded, for not only was it unauthenticated, but it contained hearsay statements that did not fall within a delineated exception. Appellant's sixth assignment of error is not well taken.

### ASSIGNMENT OF ERROR VII

"The trial court erred in refusing to admit into evidence *Plaintiff's Exhibit TT*, representing attorney Arthur Moore's letter of October 7, 1986 to appellees."

Exhibit TT is a copy of a letter that Wooster Products claimed was written by its attorney and sent to Magna-Tek.

The letter reads:

"In accord with the terms of subject Agreement, Products has paid to MTCI all funds, due to date, from Products to MTCI to secure the property, rights and services sold to Products by MTCI. In addition, Products has a deposit in bank funds sufficient to pay all additional money to become due hereafter to complete payment for the property, rights and services sold to Products by MTCI.

"Products stands ready willing and able to comply with the requirement imposed upon it by subject Agreement in the purchase of said property, rights and services.

"However, Products has received information from sources believed to be reliable, that there may be serious impediments to MTCI's ability to complete its commitments (sic) under said Agreement.

"Products demands that all parties included in the term MTCI and Products along with such legal counsel as the parties desire meet at the office of Arthur W. Moore, attorney at 201 E. Liberty St., Wooster, Ohio 44691, at the earliest possible date."

The letter was purportedly written a little over a month before the suit was instituted. The letter is unsigned. Wooster Products attempted to admit the exhibit by questioning Baker, Lovatt, and Possehl as to whether Magna-Tek received the letter. All three denied seeing the letter. Attached to the letter was a copy of a signed, certified mail certificate. As to the receipt, Lovatt was asked, "Do you recognize the name of the person who signed for it?" Lovatt responded that the name was that of an employee of Magna-Tek. The trial court ruled that the letter was inadmissible, finding that it was unauthenticated and self-serving.

The trial court properly exercised its discretion when it excluded the exhibit. In *Aftel v. Cound* (1928), 32 Ohio App. 270, an appellate court reversed a trial court's admission of a letter that the plaintiff allegedly wrote a few weeks before the suit was filed, in which he stated that the defendant owed him money. The defendant denied that he received the letter. Taking into consideration the defendant's denial and the self-serving statements contained in the letter, the reviewing court ruled that it was error to admit the letter. *Id.* at 272. Likewise in the instant case, the letter Wooster Products sought to admit was allegedly sent a month before trial. The letter contains self-serving statements to the effect that Wooster Products was willing to perform the contract but that Magna-Tek may have breached. Based upon these self-serving statements and the denials of Lovatt, Baker, and Possehl as to receipt of the letter, we conclude that the trial court correctly ruled that the letter was inadmissible.

We further note the contents of the letter containing the plaintiff's version of the case were hearsay statements that did not fall within

any exception to the hearsay rule. In a breach of contract action, the Hamilton County Court of Appeals determined that it was error to admit correspondence that the attorney for the plaintiff sent to the defendant that set forth facts favorable to the plaintiff and a demand for payment. *McCormick* v. *Mirrored Image, Inc.* (1982), 7 Ohio App. 3d 232. The court determined that the correspondence was hearsay and did not qualify as business records, nor did it qualify under other exceptions to the hearsay rule. *Id.* at 234. Exhibit TT contains the same type of hearsay statements; thus the exhibit was properly excluded.

Even if the contents of the document were not problematic, the lack of proper authentication warranted the letter's exclusion. The common manner of identifying a document is through testimony of a witness with knowledge. *St. Paul Fire & Marine Ins. Co.* v. *Ohio Fast Freight, Inc.* (1982), 8 Ohio App. 3d 155. As to the certified mail receipt, Lovatt's testimony that he recognized the name as belonging to an office worker did not adequately identify the signature as belonging to that worker. As to the letter, Baker, Possehl, and Lovatt could not identify the letter, for they stated they had no knowledge of it. Thus no one with knowledge testified as to the authenticity of the letter. Both the mail receipt and the letter were properly disallowed by the court. Appellant's seventh assignment of error is not well taken.

### ASSIGNMENT OF ERROR VIII
"The trial court erred in denying Wooster Product's (sic) motion for judgment notwithstanding the verdict."

Wooster Products argue that the trial court should have entered a judgment notwithstanding the verdict because there was insufficient evidence for the jury to find that Wooster Products breached the contract and that Magna-Tek suffered damages in the amount of $100,000. In ruling upon a motion for judgment notwithstanding the verdict, the court construes the evidence adduced at trial and the facts established in the pleadings and in the record most strongly in favor of the nonmoving party. *Osler* v. *Lorain* (1986), 28 Ohio St. 3d 345, 347. Where there is substantial evidence to support the nonmoving party's position and where reasonable minds can differ, the motion must be denied. *Id.* The court does not determine the evidence nor credibility of the witnesses in ruling upon a motion for judgment notwithstanding the verdict. *Id.*

Magna-Tek presented testimony that at the time Wooster Products filed suit, Magna-Tek was prepared to ship the necessary equipment and to organize the new plant and train its employees. In October of 1986, Arora demanded a meeting with Possehl, Baker, and Lovatt, which was impossible to organize because Possehl was out of the country. Without warning, Wooster Products filed suit. At the time of filing suit, Wooster Products had not obtained a license to operate the plant, had not completed the work on the plant, and had paid $630,000 out of the $2.1 million contract price. While Wooster Products did present evidence to justify its nonperformanced, there was substantial evidence to support Magna-Tek's counterclaim for breach of contract. Thus the trial court did not err in overruling Wooster Products' motion.

As to the damages awarded at trial, evidence was adduced that Magna-Tek was to make $500,000 profit on the contract. There was also testimony concerning the cost of various equipment and the profit that Magna-Tek expected to make once the equipment was delivered. Further testimony was heard as to traveling and living expenses incurred by Magna-Tek in carrying forth its contractual obligations. Thus the record reveals that the jury had sufficient evidence to arrive at a damage award. Appellant's eighth assignment of error is not well taken.

### ASSIGNMENT OF ERROR IX
"The trial court erred in denying Wooster Product's (sic) motion for new trial."

Wooster Products states that its grounds for a new trial motion have been argued in the previous assignments of error except for the alleged misconduct of Magna-Tek during the discovery stage of the suit. Thus, we will limit our discussion to this particular ground.

Pursuant to Civ. R. 59(A) (2), a court may grant a new trial on the grounds of misconduct of the jury or the prevailing party. A motion for a new trial on grounds of misconduct contemplates misconduct of a party during the trial. See, e.g., *The Pittsburg, Cincinnati and St. Louis Railway Co.* v. *Porter* (1877), 32 Ohio St. 328. If Wooster Products was harmed by Magna-Tek's actions during the discovery stage, it could have sought immediate relief during discovery by requesting the court to impose sanctions. Alleged misconduct of a party during discovery

is not a proper basis for granting a motion for a new trial.

Even if misconduct of a party during discovery is a proper ground under Civ. R. 59, we find that the record does not reveal, nor does the appellant argue, any particular instances of misconduct on the part of Magna-Tek. This assignment of error has no merit.

### ASSIGNMENT OF ERROR X

"The jury's verdict against Wooster Product's (sic) on appellee's counterclaim was against the manifest weight of the evidence."

In its last assignment of error, Wooster Products chooses to rely on its arguments as set forth in the previous assignments of error. Based upon our disposition of the previous assignments of error, we find that the verdict was not against the manifest weight of the evidence. Assignment of error ten is not well taken. Judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P. J.
CIRIGLIANO, J.
Concur

---

[1] The appeal has been stayed as to Magna-Tek Components, Inc. for it has been placed in involuntary bankruptcy. For purposes of this decision all the appellees will be designated as Magna-Tek unless it is necessary to refer to a particular appellee separately.