Fenelli's Estate.

50

Argued April 23, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, STERN and BARNES, JJ.

*John E. Evans, Sr.,* with him *B. A. Sciotto,* for appellant.

*Robert A. Henderson,* for appellee.

OPINION BY MR. JUSTICE STERN, June 26, 1936:

In 1929 the Second National Bank of Altoona was appointed by the orphans' court trustee of a fund in a decedent's estate, the income of which was to be paid to his wife for life and the principal at her death to his sons. In 1931 the bank became insolvent and went into liquidation, whereupon the court appointed the Central Trust Company of Altoona as substituted trustee. In that capacity the Central Trust Company, in 1934, petitioned the court for an order on the original trustee to turn over the trust fund, which amounted to $17,651.74. The respondent, the Second National Bank, filed an answer setting forth that upon its appointment as trustee it had invested the fund to the extent of $15,000 in a first mortgage on a certain property in Altoona, and $2,500 as a participation in a $7,000 first mortgage on another property in Altoona, both of which mortgages

were recorded in the office of the recorder of deeds. It appeared, however, that in each of the mortgages the Second National Bank was named as mortgagee without any further designation to indicate that the mortgages were owned by it in a fiduciary capacity, and it is contended that there was no specification of the fiduciary relationship even on the bank's records. The respondent asked that it be permitted to turn over these securities to the substituted trustee, but the petitioner demanded that the trust fund be paid to it in cash.

"It is well settled that where a trustee invests trust money in property which he takes in his own name as an individual the beneficiary has the option to accept the investment or require the trustee to account for the money so invested, with interest": *Yost's Estate*, 316 Pa. 463, 467, and cases there cited. See also *Guthrie's Estate*, 320 Pa. 530. Without discussing the many reasons upon which this salutary legal principle is founded, it is clear that, if petitioner's allegations be proved, it was not obliged to accept the mortgages but could call for an accounting in cash.

The orphans' court ordered that the petition be dismissed, and authorized the respondent to deliver to the petitioner the assets of the trust estate in kind. The point now raised, however, was not brought to the attention of the court below nor argued before it, and the respondent claims that for this reason it should not be considered by this court on appeal. But the facts necessary to sustain it are contained in the petition and answer which constitute the record, and the question is one of law on the allegations of these pleadings. In the court below the petitioner contended that it was entitled to receive the trust estate in cash, and the mere fact that it did not there advance in support of its position the additional argument which has since occurred to it and which is vital to the proper decision of the question involved, does not bar it from making a more extended presentation of the subject in this court, the point raised

being covered in the statement of questions involved and comprehended within the assignments of error. The situation is not analogous to one where, under a statute or a rule of court, it is necessary to assign on the record specific reasons in support of a rule or motion, as, for example, for a new trial, or for judgment for want of a sufficient affidavit of defense; in such cases different considerations might perhaps be applicable. Moreover, section 22 (b) of the Orphans' Court Act of June 7, 1917, P. L. 363, provides: "The Supreme and Superior Courts of this Commonwealth shall in all cases of appeal from the definitive sentence or decree of the orphans' court, hear, try and determine the same as to right and justice may belong, and decree according to the equity thereof; . . .," and this act has been interpreted to require that this court should determine every basic question involved in such appeal even though the point presented may not have been raised in the court below: *McCullough's Estate (No. 2)*, 292 Pa. 422; *Pollock's Estate*, 306 Pa. 301, 312.

Respondent contends that if the point now discussed had been suggested by petitioner in the argument in the court below, it would have been able to show that the beneficiaries of the trust knew the fund was invested in the two mortgages, and it could have amended its answer by adding such an allegation and then offering testimony to prove it. Under the circumstances there is no reason why it should not now be given this opportunity, and therefore no final order will be made at this time. Attention is called, however, to the discussion of the subject in *Yost's Estate,* supra, where it is indicated that the trustee must prove not only that the beneficiaries knew of the investment but that there was brought home to them knowledge that the fact of the fiduciary relationship had not been properly evidenced.

If the final ruling on this issue be in favor of the petitioner, it will then be incumbent upon it, in appropriate proceedings, to produce testimony sufficient to identify

the trust res as a part of the present assets of the insolvent trustee. Even though it be presumed as a matter of law that whatever money was used to purchase the mortgages taken in the name of the bank was its own money, and that therefore it continued to hold as trustee the cash constituting the trust fund, nevertheless, if petitioner, on behalf of the beneficiary of the trust fund, wishes to fasten upon respondent a preferred claim, it must trace the trust res from the time when the latter acquired it, in accordance with the principles laid down in *Mehler's Appeal*, 310 Pa. 25; *Royersford Trust Co.'s Case*, 317 Pa. 490, and other pertinent authorities. If it find itself unable to establish the necessary identification, it will, even though entitled to payment in cash, be limited to the status of a general creditor of the insolvent bank for the original amount of the fund, with simple interest to the date of the bank's insolvency and allowing credit for payments of interest heretofore made by respondent.

The order of the court below is reversed and the record remitted for further proceedings consistent with this opinion; costs to abide the result.