## Garrett's Estate.

288

Argued May 25, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Maurice Bower Saul,* with him *R. M. Remick,* of *Saul, Ewing, Remick & Saul, H. Alan Dawson* and *Arno P. Mowitz,* for appellant.

*Wilhelm F. Knauer,* for appellees.

*Percival H. Granger,* with him *Thomas J. Minnick, Jr.,* Special Deputy Attorneys General, and *Claude T. Reno,* Attorney General, for Commonwealth, appellee.

*John R. K. Scott, William T. Connor, Hardie Scott* and *Harry T. Devine,* for appellees.

*William A. Carr* and *George F. Krapp,* for appellee.

*James B. Anderson, Jr.,* for appellee.

OPINION BY MR. JUSTICE LINN, June 19, 1939:

This appeal is from the refusal to grant a petition for letters rogatory[1] to a court in Germany to take the testimony of the petitioner and of certain witnesses.[2]

Petitioner claims to be a first cousin of Henrietta Garrett who died in 1930 domiciled in Philadelphia, and to be entitled to share in such part of her estate as may pass under the intestate laws. The briefs say there are many claimants[3] and that the fund involved amounts to millions of dollars. The Commonwealth has appeared by the Attorney General and claims by escheat. Part of the estate appears to have passed by will, admitted to probate December 1, 1930, letters of administration c. t. a. issuing to Charles S. Starr and Frank G. Marcellus.

The appellant, Schaefer, had notice of the death of Mrs. Garrett and there is evidence that in November, 1932, he was represented by one of counsel who then represented and still represents the administrators. He therefore had ample sources of information. June 4, 1937, he filed a petition asking that the testimony of himself and certain witnesses in Germany be taken there because the condition of his health disabled him from

---

[1] As to letters rogatory, generally, see *Case of Captain McKenzie,* 2 Pars. Eq. 227; *Kuehling v. Leberman,* 9 Phila. 160; *Buck v. Strong,* 6 D. R. 116; *Vetter's Estate,* 15 D. & C. Rep. 218; 23 Iowa Law Review 92; Wigmore, Evidence, 1934 Supplement, sec. 2195a.

[2] It was granted to take the testimony of custodians of documents on conditions not material to the disposition of this appeal, but refused in other respects.

[3] In appellant's brief, counsel say, "Actually, only four groups of claimants comprising thirteen persons have appeared in opposition to appellant's petition."

coming to this state to prove his claim and, in addition, that he could not require the presence of foreign witnesses here. The petition was opposed by others interested and was ultimately withdrawn, apparently because petitioner considered himself unable to bear the expense involved. Nearly two years later, on February 17, 1939, he filed the present petition for letters rogatory. It appears to be based on the same ground as was alleged in the former application. When it was filed, appellant was 85 years of age. We assume, for the purposes of this discussion, that he cannot come here without taking the risks stated in his physicians' affidavits. But there is nothing [4] to indicate that there would have been any difficulty about his coming during the period between the death of Mrs. Garrett and several years thereafter.

The Orphans' Court Act, 1917, P. L. 363, section 20(b) 2 and 3, 20 PS sections 2522, 2523, provides: "2. Every orphans' court of this Commonwealth shall have power to make rules regulating the taking of depositions of aged, infirm, and going witnesses, and the issuance and execution of commissions to take testimony and letters rogatory.

"3. Where the testimony of any witness is desired to be read in evidence in any proceeding now or hereafter pending in any orphans' court of this Commonwealth, and such witness resides in any other State, Territory or possession of the United States of America, or in any foreign country, the court may, on the application of any party, provide for the taking, in such . . . foreign country, of the testimony of such witness or witnesses

---

[4] The statement in the doctor's affidavit that "in the course of the last ten years, there has appeared progressively changes due to age and corresponding complaints, slowly decreasing diminution of efficiency, weakening of the entire circulation, and often conditions of dizziness," is too vague and general to be taken as conclusive that appellant might not have come here with entire safety in 1932 and for several years later.

orally, before an examiner appointed by the court, or before any person authorized by the laws of such . . . foreign country to administer oaths. In granting any such application, the court may impose such terms as it shall deem proper as to the payment, by the party applying therefor, of the costs and expenses involved, including reasonable counsel fees and traveling expenses; and may prescribe the notice to be given, and the time within which such testimony shall be taken." The statute is declaratory of the prior law which recognized the inherent power of the court to issue letters rogatory and vests the orphans' court with discretionary power in dealing with such applications: compare *Middleby's Estate,* 242 Pa. 39, 88 A. 773.

The learned court below was of opinion that the petition must be refused in the respects stated. The question on this appeal is whether there was abuse of judicial discretion in reaching that conclusion. The Orphans' Court Act of June 7, 1917, P. L. 363, section 22(b), 20 PS section 2602, provides that on appeal the Supreme Court shall "hear, try and determine the same as to right and justice may belong, and decree according to the equity thereof," which has been held to require "that this court should determine every basic question involved in such appeal even though the point presented may not have been raised in the court below": *Fenelli's Estate,* 323 Pa. 49, 52, 185 A. 758; see also *McCullough's Estate,* 292 Pa. 422, 141 A. 239; *Constable's Estate,* 297 Pa. 212, 215, 146 A. 537.

In reviewing the exercise of discretionary power, it is impracticable to lay down a general rule that will determine when such a petition should be granted and when it should be refused. The circumstances of the particular case must control. When the court has come to a conclusion by the exercise of its discretion, the party complaining of it on appeal has a heavy burden; it is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first

place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Mielcuszny et ux. v. Rosol,* 317 Pa. 91, 93, 94, 176 A. 236. In *Middleby's Estate,* 242 Pa. 39, 88 A. 773, we affirmed the ruling of the court below refusing to allow the examination in another state of an ancillary executor in a proceeding pending in this state, to remove him, but we have not heretofore been called on to review the exercise of discretion in circumstances resembling those presented by this record. It may therefore be helpful to consider appeals dealing with the question in other jurisdictions.

In the Court of Appeal, in *Coch v. Allcock,* 21 Q. B. D. 178 (1888) Lord ESHER, M. R., said: "The Court must take care on the one hand that it [order to take testimony] is not granted when it would be oppressive or unfair to the opposite party, and on the other hand that a party has reasonable facilities for making out his case, when from the circumstances there is a difficulty in the way of witnesses attending at the trial. All the circumstances of each particular case must be taken into consideration. With regard to the case of a plaintiff asking for a commission to examine himself, that also appears to me to be a matter of discretion, but the discretion will be exercised in a stricter manner, and the Court ought to require to be more clearly satisfied that the order for a commission ought to be made." Now, not only do we agree with the principle announced by the learned Master of the Rolls that when a plaintiff asks to have himself examined abroad, he must submit his petition to a stricter scrutiny than would be exercised in passing on a petition for the examination of

witnesses only, but we all agree that, in addition, if a foreign plaintiff is claiming against the Commonwealth,[5] his petition must show a situation against which no reasonable objection can be suggested.

*Nadin v. Bassett,* 25 Ch. Div. 21 (1884), involved an application for the appointment of special examiners to take testimony of a plaintiff in New Zealand who claimed property in England. The application having been granted below, the Court of Appeal imposed a condition: "On his own showing, he has been absent from England twenty-four years, and it is by no means an improbable supposition that he may be some person unconnected with the family, who having heard of this property, has come forward alleging himself to be the heir of the devisee. Justice requires that he should appear at the trial in order that his identity may be tested. I think, therefore, that the order must be qualified by inserting a proviso that the depositions of the Plaintiff are not to be read if the Defendant requires him to appear at the trial to be examined and cross-examined." (p. 30) LINDLEY, L. J., said: "Our order in fact comes to this, that the Plaintiff's depositions on his own behalf are not to be read without the consent of the Defendant."[6]

---

[5] He has the burden of proof: *Link's Estate,* 319 Pa. 513, 516, 180 A. 1. We said at page 522: "To defeat the claim of the Commonwealth the evidence must be so clear, precise and definite in quality and quantity as to satisfy the court below that the relationship claimed existed."

[6] A similar condition was imposed in *Light v. The Governor and Company of the Island of Anticosti,* 58 Law Times N. S. 25 (1888). See also *Gray v. Braden,* 13 D. R. 481; *Vetter's Estate,* 15 D. & C. 218. In *Macaulay v. Glass,* 47 Solicitor's Journal 71 (1902) the Court refused a commission to take the evidence of plaintiff in Rhodesia, who had been obliged to bring suit in England where service could be had. In *Crofton v. Crofton,* 20 Ch. Div. 760 (1881), the court was asked to issue a commission to a French court to examine a witness who, the court thought, was interested in the claim. The commission was refused because the

In *Berdan v. Greenwood*, 20 Ch. Div. 764, (1881) note, the ground of plaintiff's application was that he was afflicted by heart disease which would render a sea voyage perilous to him. The appeal was from an order granting the application; it was reversed for abuse of discretion. The question was whether, under the wording of a rule of court, it was "for the purposes of justice" so to take the plaintiff's testimony. BAGGALLAY, L. J., said "Of course, 'for the purposes of justice' does not mean in the interest of either party to the litigation, but in the interest of all the parties to the litigation." After considering the nature of the issues involved, he said: "And I think that, even in the extreme case where the refusal of a commission might prevent the evidence of the witness from being given at all, yet, if the Court was satisfied that the non-attendance of the witness before the tribunal which had to decide the case would lead to injustice to the Defendant, the commission still ought to be refused. I do not, however, so regard the evidence in the present case." In *Chase v. Northern Trust Co.* [1932] 4 D. L. R. 143, a Canadian court allowed the taking of a plaintiff's evidence in California, in a suit for counsel fees.

From November, 1932, until May, 1937, appellant made no attempt, so far as the record shows, to prove his claim; it is no excuse for this delay that the master was not appointed until 1936, because that appointment was not essential to enable appellant to proceed. He

---

court was of opinion it was a case in which the party should be "subject to the most drastic cross-examination" and for that purpose should appear.

Appellant has cited common pleas and orphans' court decisions (*Colosini v. Jefferson, etc., Iron Co.,* 65 P. L. J. 122; *Cunnius v. Reading School District,* 25 Pa. C. C. 17; *Sims v. Cooper,* 27 D. R. 471; *Bleakley's Estate,* 28 D. R. 289) in which testimony was taken out of the jurisdiction of the trial court. We have considered them along with other decisions of lower courts some of which are cited in this opinion.

knew of the death of Mrs. Garrett and had counsel in 1932. It is a circumstance to be considered that he did nothing in the interval to prove his claim though procedure was available;[7] indeed, he ignored the example of another claimant who issued a commission to take testimony abroad in September, 1932, which was returned in October of the same year.

The petition is not sworn to by himself but by an attorney in fact, one of his counsel, the letter of attorney being dated December 19, 1935. Rule 15(a) of the orphans' court provides: "All applications to the court shall be by petition, verified by affidavit, setting forth the facts necessary to give the court jurisdiction, the specific ground of application or cause of complaint, and the relief prayed for. The petition shall be signed and sworn to by the petitioner, except in cases where this is impracticable, the reason therefor to appear in the petition or affidavit." The Commonwealth's brief calls attention to the violation of this rule and asserts that it does not appear that it was impracticable to have had a petition sworn to by appellant, himself, especially in view of the long period of time available for that purpose, and that, in a case of this nature, the court and the parties interested should have the affidavit of one with personal knowledge of essential facts averred. We think it is a criticism the Commonwealth is entitled to make.

The brief filed on behalf of Kretchmar et al. calls attention to part of paragraph 6 of the petition that "Certain photographs or pictures of the petitioner and of deceased members of his family, immediate and collateral, which were in the possession of the decedent in her home in Philadelphia, Pa., at the time of her death there, and are now in the possession of the Custodian appointed by this Honorable Court . . ." That

---

[7] Compare *Int. Co. v. Penna. R. R. Co.*, 214 Pa. 469, 471, 63 A. 880.

averment is referred to in connection with a petition filed November 4, 1935, by the same parties for the removal of the administrators c. t. a. charging a conspiracy pursuant to which, so it is averred, there were "placed among the personal effects of the decedent, Henrietta E. Garrett, certain family photographs of alleged ancestors of one Johann Peter Christian Schaefer, [appellant] a resident of Bad Nauheim, Germany, and others, at this time undisclosed for the apparent purpose of fraudulently establishing proof of relationship of the said John Peter Christian Schaefer and others, to the decedent Henrietta E. Garrett." This fact is stated in various forms in that petition. In such circumstances, those opposing appellant's kinship to testatrix would appear to be entitled to the fullest opportunity to cross examine,[8] which, it must be conceded, cannot, without much restriction, be exercised by written cross interrogatories accompanying the letters rogatory.

Before such an application is granted, the petitioner should bring to the attention of the court circumstances to satisfy the court that it is in the interest of justice that the examination should take place abroad, and this does not mean in the interest of the applicant alone as his argument seems to suggest. All the other claimants have an equal interest in the administration of justice. Even if we assume, in accord with the doctors' affidavits, that appellant is now unable to travel, that fact will not determine that the administration of justice will fail, because, as we have already said, the Commonwealth and a number of other claimants are equally interested that justice be done; they have claims of their own, and may rightfully insist on the same scrutiny by cross-examination of appellant and witnesses sup-

---

[8] Compare *Crofton v. Crofton*, 20 Ch. Div. 760 (supra); *Herring's Estate*, 11 D. & C. Rep. 519 (1928); *Vetter's Estate*, 15 D. & C. Rep. 218 (1931).

porting his claim as his counsel here may make of evidence offered in support of appellees' claims. What was said in one of the opinions quoted above would generally be applicable here: "Justice requires that he [the party] should appear at the trial in order that his identity may be tested." But his inability to come at this time does not permit us to say that the learned court below abused its discretion in holding that if any parties to the case must suffer by appellant's delay in not moving promptly in 1932 it must be the delaying appellant and not the other parties.

Appellees desire oral cross-examination. It is not a sufficient answer to this demand to say that written cross-interrogatories may be filed. It is common experience that answers in oral cross-examination and the manner in which they are given, suggest other questions; that such lines of inquiry cannot be anticipated, and that frequently the discovery of truth is dependent on the exercise of the right immediately to pursue the examination. In such circumstances we cannot accept the position taken in appellant's brief that "to grant the petition would work no real injury to appellees." Action under the rule of the court below referred to by appellant, that on the return of the commission, adverse parties may "file exceptions to the form thereof, to the manner of swearing the witnesses or to any acts or omissions of the officer taking the testimony or of any other officer in or about the execution thereof" does not supply the advantages lost by the limited nature of the scope of cross-examination permissible by written cross-interrogatories.

Appellant contends that the action of the orphans' court deprives him of property without due process and in support of his argument makes the following quotation from a treaty with Germany—"The Nationals of each high contracting party shall receive . . . the most constant protection and security for their persons and property . . . Their property shall not be

taken without due process of law. . . ." He would be entitled to and would receive the benefit of due process whether there was a treaty or not. In support of the argument the brief refers to requirements of notice and opportunity to be heard and to present evidence. These elements of due process have all been present since the death of testatrix; none is missing. Appellant might at any time after notice of Mrs. Garrett's death have appeared and taken necessary steps[9] for making his claim. Even after his own delay, the learned court below heard and considered his application and in the exercise of the discretion vested in the court, concluded that appellant was not entitled to what he asked; he has not been deprived of any hearing. Nor is he in better position as respects the evidence of witnesses whose attendance cannot be compelled. He might long ago have taken steps to have their evidence taken. He asks that the orphans' court request a court in Germany to assist it in the trial of a cause in which he is a plaintiff claiming against the Commonwealth. In complaining that his application was refused, he points out no mistake of law made by the learned court below, apart from saying there was abuse of discretion. The probate of the will and the granting of letters to the personal representatives was a judicial act, substantially in rem: *Cunnius v. Reading School District*, 206 Pa. 469, 56 A. 16;[10] *West v. Young*, 332 Pa. 248, 251, 2 A. (2d) 745. From that moment the court was open to the appellant precisely as it was to all the other claimants. Our legislation amply provided for adminstration of the estate. If he did not choose to avail himself of the opportunities for the periods of time stated, his loss was not the result of want of due process but of his election not to proceed in time. To that, it is no answer now to say, after having waited from 1932 to 1937, that he found

---

[9] See *Int. Co. v. Penna. R. R. Co.,* 214 Pa. 469, 471, 63 A. 880.
[10] Affirmed, 198 U. S. 458.

himself physically incapacitated. We all agree that no abuse of discretion has been shown.

In view of the averment in the petition stating the circumstances in which the petition for a commission filed in 1937 was withdrawn, as we understand it, because an order pursuant to the prayer of the petition would have been conditioned on the payment of expenses in an amount which petitioner considered himself unable to meet and which led to the alternative of the present petition, we have said nothing about the rule that letters rogatory "are only necessary in countries which will not permit a commission to be executed, or where the witness refuses to testify under the commission." *Ohlweiler v. Ohlweiler*, 72 Pa. Superior Ct. 518. Nothing now decided should be understood as displacing that rule.

The order appealed from must be affirmed at appellant's costs.