**Rogers Estate**

*Stephen P. McGuire,* for exceptants.
*David W. Wood, Jr.,* for Mark Joseph Rogers.

GAWTHROP, *J.*, September 3, 1980—We have before us the petition of nine exceptants,[1] all citizens of Northern Ireland, seeking leave to use oral depositions, written interrogatories, or letters rogatory, to furnish evidence to this tribunal in support of their claim that they are maternal first cousins to decedent, who died intestate, and are thereby entitled to share in the estate.

Mark Joseph Rogers of Philadelphia, the sole surviving paternal first cousin of decedent, has been designated by the administrator as the sole heir of the estate. He opposes the petition, citing the general rule that "a person who claims as heir to an intestate estate in this Commonwealth is required to appear before the Pennsylvania Court in person to establish his claim." Slotkin Estate, 16 Fiduc. Rep. 555, 561 (1965). See, also, Garrett's Estate, 335 Pa. 287, 6 A. 2d 858 (1939); Martinzik Estate, 25 D. & C. 2d 701 (1962); Sochanczak Estate, 29 D. & C. 2d 609 (1963).

Exceptants respond that the relatively small amount of the estate, approximately $11,000, together with the expense of transporting nine people from Ulster to West Chester and back, warrants an exercise of our discretion by not requiring strict compliance with the doctrine of Slotkin. We agree.

Our review of the relevant rules of procedure, today in effect, leads us to conclude that the orphans' court division, just as the regular court of common pleas, is authorized to allow the taking of depositions of distant witnesses for use as substantive evidence at trial.

Our analysis begins with Pennsylvania Orphans' Court Rule 3.1, which states that, "except where

1. Bridget V. Coyle, Rose Coyle Hollywood, Alice Coyle Doran, Peter Leo Coyle, Ann M. Coyle Slane, John J. Coyle, Francis A. Coyle, Patrick I. Coyle, and Kevin L. Coyle.

otherwise provided . . . the pleading and practice [in Orphans' Court] shall conform to the pleading and practice in equity in the local Court of Common Pleas." Equity procedure, in turn, "shall be in accordance with the rules relating to the action of assumpsit" except as otherwise provided in the equity chapter: Pa.R.C.P. 1501.

Orphans' Court Rule 3.6 specifically refers to the practice relating to depositions and provides that:

"The local Orphans' Court, by general rule or special order, may prescribe the practice relating to depositions, discovery, production of documents and perpetuation of testimony. To the extent not provided for . . . the practice relating to such matters shall conform to the practice in the Trial or Civil Division of the local Court of Common Pleas."

Further, Pa.R.C.P. 4001(a)(1), the preamble to the Discovery Chapter, provides: "The rules of this chapter apply to any civil action or proceeding [as] law or in equity brought in or appealed to any court which is subject to these rules. . . ." We conclude that the discovery rules are applicable to actions in the orphans' court division.

Turning in the Discovery Chapter to Pa.R.C.P. 4020, we note the provisions pertaining to a distant or a "going" witness:

"(a) At the trial, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had notice thereof if required, in accordance with any one of the following provisions: . . . (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds . . . (b) that the witness is at a greater distance

than one hundred (100) miles from the place of trial or is outside the Commonwealth, unless it appears that the absence of the witness was procured by the party offering the deposition, or . . . (e) upon application and notice that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

In his brief, counsel for designated heir Mark J. Rogers cites four cases, supra, in support of his claim that exceptants are required to appear personally before this court. In all of those, petitions by foreign claimants to submit evidence from abroad without a personal appearance were denied. We find these cases distinguishable from the matter at bar and indeed supportive of the result here reached.

The decision in Garrett's Estate, supra, affirming the lower court's refusal to grant a petition for letters rogatory[2] to a court in Germany is not a general rule abolishing the taking of testimony of witnesses in foreign countries. Rather, the court, at p. 292, explicitly states: "[I]t is impracticable to lay down a general rule that will determine when such a peti-

2. Letters rogatory entail the oral examination of a witness, viva voce, upon a list of interrogatories filed: Doubt v. Pittsburg and Lake Erie Railroad, 19 Pa. C.C. 178, 180 (1897), as distinguished from the usual written interrogatories, to be answered in writing. See Pa.R.C.P. 4005-6. See, generally, 23 Am.Jur. 2d, Depositions & Discovery § 23; Anno., Power of court to issue or honor letters rogatory, 9 A.L.R. 966, 108 A.L.R. 384. Our reasoning with respect to the ineffectiveness of letters rogatory obtains a fortiori with the written interrogatory, where the opportunity for the deliberate, carefully phrased answer is manifest.

414

tion should be granted and when it should be refused. The circumstances of the particular case must control." The court further states at 293:

"The Court must take care on the one hand that it [order to take testimony] is not granted when it would be oppressive or unfair to the opposite party, and on the other hand that a party has reasonable facilities for making out his case, when from the circumstances there is a difficulty in the way of witnesses attending at the trial."

In Garrett, the estate was worth millions of dollars. There was a nine-year unexplained delay between decedent's death and the petition before the court, during which time the German petitioner's health deteriorated so that he could no longer travel safely. Also significant was the American claimant's allegation that petitioner was involved in a conspiracy with the administrators to establish petitioner's fraudulent claim of kinship. The court found that full cross-examination on the alleged fraud could not be accomplished by written interrogatories accompanying letters rogatory, stating at 298: "It is common experience that answers in oral cross-examination and the manner in which they are given, suggest other questions; that such lines of inquiry cannot be anticipated, and that frequently the discovery of truth is dependent on the exercise of the right immediately to pursue the examination."

This fact is known to any trial lawyer. Effective cross-examination is a living, dynamic phenomenon, and although it is usually more successful after preparation, it cannot be some prefabricated script in a can. Like a trained running back, the skilled cross-examiner must be free to reverse his

field, to suddenly slip through an evanescent crack in his opponent's defense. He must be able to seize that moment, and if the questioning procedures preclude such, they are not worthy to be called "cross-examination." The English philosopher, Jeremy Bentham, called cross-examination "a security for the correctness and completeness of testimony." Rationale of Judicial Evidence, b. II, ch. IX, and b. III, ch. XX.

Mr. Justice Lewis Powell, in reversing the verdict in Chambers v. Mississippi, 410 U.S. 284, 295, 93 S. Ct. 1038, 1045-6, 35 L.Ed. 2d 297, 308-9 (1973), well stated:

"[Chambers] . . . was not allowed to test the witness' recollection, to probe into the details of his alibi, or to 'sift' his conscience. . . . The right of cross-examination is more than a desirable rule of trial procedure. It . . . helps assure 'the accuracy of the truth-determining process'. . . . [I]ts denial or . . . diminution calls into question the ultimate '"integrity of the fact-finding process"'. . . ."

We have no desire to attenuate the ultimate integrity of the fact-finding process, but we believe that the use of the oral depositions, as urged at bar, would not have that effect. Spontaneity would be preserved and the crucible of cross-examination would endure.

Further, in denying his petition, the Garrett court noted petitioner's failure to pursue his claim in person at an earlier time when his health permitted him to travel.

In the instant case, there are no specific allegations of fraud, the exceptants' request is timely, and their reasons for the request have been continuous since decedent's death.

Likewise, the significant factors on which petitions to take foreign testimony were denied in Slotkin Estate, Martinzik Estate, and Sochanczak Estate, supra, are absent at bar. Each of those cases addressed a claim by a Soviet citizen, made after an inexcusable lapse of time, supported only by documents prepared by a legal arm of the Soviet government. The significance of the Soviet citizenship of claimants is stressed in each case and articulated by the Sochanczak court at 619:

"In weighing the hardship falling on this claimant because of her inability to present her case except by personal appearance before this court, we must not overlook the disadvantage at which our own citizens would be placed if we should accept at face value documents or other forms of evidence coming out of the U.S.R.R. [sic] . . . the lawyer behind the Iron Curtain who gathers such evidence is not a free agent acting in the exercise of a free profession; he is not a champion of private rights but an auxiliary agent of the State."

In contrast, the facts at bar weigh in favor of our allowing the exercise of Pa.R.C.P. 4020 by allowing the exceptants to submit evidence to this court by deposition. The claim is timely, and is supported by the affidavit of a local attorney and alleged copies of exceptants' birth records. The estate is relatively small; each claimant seeks an award of little over $1,000. Travel expenses for a personal appearance before this court are high, and would nearly consume the amount involved, assuming they prevail. Northern Ireland is a democratic country; there is no indication that documents or testimony prepared there would be inherently unreliable. We recognize the political unrest which plagues Ireland;

however, such unrest is in no way comparable to the conditions behind the Iron Curtain which significantly influenced the decisions reached in the cases cited above. We cannot overlook the timing of these precedents. We deem it more than coincidence that such language was penned the same year as the Cuban missile crisis, for example, when the Cold War was at its chilliest.

The value of cross-examination of witnesses at trial and the importance of observing their demeanor in evaluating credibility is undeniable. However, the potential disadvantage resulting from the admission of foreign depositions in place of in-court testimony must be weighed against the availability of reasonable alternatives by which the foreign claimants may present their case: Garrett, supra. At bar, the expense of travel in relation to the amount of the claims renders personal appearances unreasonable. The interests of justice in allowing exceptants to present their claims with minimal disadvantage to Mr. Rogers can best be served by permitting the use of depositions of the Irish claimants with opportunity for full cross-examination by Mr. Rogers through counsel retained in Ireland.

We note that the potential disadvantage of the use of depositions—inability for the fact finder to observe the witnesses' demeanor—may be minimized by use of videotape under the provisions of Pa.R.C.P. 4017.1. The courts have traditionally been receptive to technological advances. Decades ago, for example, the Superior Court permitted the use of movies, stating: "From time to time the courts have recognized new agencies for presenting evidential matters. The novelty of the talking motion picture is no reason for rejecting it if its accuracy and reliability, as aids in determining the

truth, are established." Com. v. Roller, 100 Pa. Superior Ct. 125, 128 (1930) (opinion by Robert S. Gawthrop, J.).

Counsel have advised us that the availability of such equipment in Ulster is questionable, but we urge the Irish claimants to make use of any such technology available to them.

For the foregoing reasons, we enter the following

### DECREE

The petition for use of oral depositions, written interrogatories, or letters rogatory is granted in part, and petitioners are hereby given leave to take oral depositions in Northern Ireland for use at trial.