**Carl A. HOFFMAN, Jr., D.O. and Pennsylvania Institutional Health Services, Inc.**

v.

**Gregory H. KNIGHT, Esquire and Hetrick, Zaleski, Ernico & Pierce**

**Appeal of: Joseph D. Lehman**

Superior Court of Pennsylvania.

Submitted Jan. 6, 2003.
Filed April 25, 2003.

Robert M. Wolff, Camp Hill, for appellant.

Joshua D. Lock, Harrisburg, for Hoffman.

Jeffrey B. McCarron, Philadelphia, for Knight and Hetrick, Zaleski, Enrico & Pierce.

Before: DEL SOLE, P.J., FORD ELLIOTT and POPOVICH, JJ.

POPOVICH, J.:

¶ 1 This appeal stems from the May 10, 2002 Order of the Court of Common Pleas, Dauphin County, which granted a commission to take testimony of a witness outside Pennsylvania, namely, Joseph Lehman.[1] Upon review, we reverse.

¶ 2 The underlying action involves claims by Pennsylvania Institutional Health Services, Inc. (PIHS), and the individuals who operated PIHS,[2] for alleged legal malpractice and breach of contract against their former lawyer, Gregory Knight, Esquire (Knight), and his firm, Hetrick, Zaleski, Ernico and Pierce (Law Firm), collectively Appellees. According to the Complaint, PIHS retained Knight in order to incorporate PIHS under the laws of Pennsylvania, to advise PIHS on governmental contracting, particularly with the Pennsylvania Department of Corrections (DOC), to represent PIHS in an administrative law action surrounding the death of inmate John Powell at SCI–Camp Hill, to obtain from DOC contractually owed compensation and to provide advice during negotiation for an office lease for PIHS. *See* Complaint, at ¶ 5.

¶ 3 The claims in the ten count Complaint center on allegations of Knight's legal malpractice and breach of contract in his dealings with PIHS and between PIHS and DOC. Counts I and II raised legal malpractice and breach of contract claims regarding PIHS's incorporation. Counts III and IV raised legal malpractice for failure to protect PIHS for extra-contractual services. Counts VII and VIII raised legal malpractice and breach of contract claims regarding actions with the Pennsylvania Board of Claims. Counts IX and X raised legal malpractice and breach of contract claims regarding the office lease.

¶ 4 Counts V and VI raised legal malpractice and breach of contract claims for failing to respond appropriately to administrative actions of DOC. The administrative action resulted in the suspension of contracts between DOC and PIHS and in the suspension of PIHS and its physicians from any and all state correctional facilities. These administrative actions were the result of a DOC internal investigation into the death of John Powell (Powell), an inmate at SCI–Camp Hill, who died while PIHS was the medical services provider. DOC determined that Powell's death was the result of dehydration. In the Complaint, PIHS claimed that Knight committed malpractice and breach of contract because Knight failed to challenge an autopsy report and to proceed with litigation against DOC. PIHS contended that the suspensions were improperly based on the determination that PIHS was responsible for the death of Powell due to dehydration since Powell did not die from dehydration. Regarding Lehman, PIHS contended:

> On July 29, 1992, Corrections Commissioner Lehman wrote to Dr. Hoffman advising him that a DOC internal investigation "raises very grave concerns about the adequacy of medical care provided to Mr. Powell", and announcing a ban of Dr. Hoffman and John Lesniew-

1. This case was transferred from the Commonwealth Court because although Joseph Lehman was once an officer of the Commonwealth, namely the Commissioner for the Pennsylvania Department of Corrections, he no longer was, and he was not a party to this case. Since the action was not against the Commonwealth or an officer thereof, the case was transferred to the Superior Court pursuant to 42 Pa.C.S.A. § 5103.

2. PIHS was a medical services provider to certain correction institutions of Pennsylvania. Carl Hoffman, Jr., D.O. (Hoffman) was an individual who operated PIHS. His claims were derivative of PIHS as its principal shareholder.

ski, D.O., a PIHS physician, from the grounds of any state correctional facility. Complaint, at ¶ 82.

¶ 5 The parties engaged in extensive discovery. Trial was scheduled for the August 2000 trial term but was continued until the January 2001 trial term. On October 10, 2000, Appellees filed a Petition for the Issuance of a Letter Rogatory to take the testimony of Lehman. On October 11, 2000, the trial granted the petition and directed the prothonotary to issue a letter rogatory to take the testimony of Lehman. Lehman filed a brief in opposition followed by a motion for reconsideration because the trial court issued the letter rogatory without giving Lehman an opportunity to be heard. The trial court vacated its October 11, 2000 order, as well as the letter rogatory issued by the prothonotary.

¶ 6 On May 7, 2002, Appellees filed in the trial court a Petition for Commission to the Superior Court of Washington State, Thurston County, for Issuance of Subpoena. In the petition, Appellees stated that Lehman, the current Secretary of the Department of Corrections for the State of Washington, was the Commissioner of the Pennsylvania Department of Corrections during the suspensions of PIHS and Hoffman. Appellees claimed that Lehman had knowledge of the investigation regarding the suspensions. Appellees proposed to call Lehman to testify that the death of Powell was not a significant factor in the decision by DOC to suspend PIHS and Hoffman and to discontinue the contractual relationship with PIHS. Appellees claimed prejudice in his defense without the testimony of Lehman.

¶ 7 On May 8, 2002, Lehman filed a Brief in Opposition. On May 10, 2002, the trial court granted the petition and issued a commission to obtain Lehman's trial testimony as being necessary in the interest of justice. Lehman filed a timely appeal of this order. The trial court did not order a 1925(b) statement nor did it file an opinion explaining its reasoning for granting the Commission.

¶ 8 On appeal, Lehman presents the following issues for our review:

1. Did the record support the trial court's determination that Lehman's testimony was necessary in the interests of justice where the record contained only a vague reference to how his testimony was remotely related to an issue in the case?

Did Knight specifically show:

   a. how Lehman's proposed testimony related to the issues of the case;

   b. that the information sought through Lehman's testimony could be obtained through no other means; or

   c. how Knight would be prejudiced without Lehman's testimony?

2. Did the trial court abuse its discretion by granting the petition even though the testimony sought is protected by the deliberative process privilege?

Appellant's brief at 5.

¶ 9 Before addressing the issues in Lehman's appeal, we must first ascertain whether the appeal is properly before us. An appeal may be taken only from a final order, unless otherwise permitted by rule or statute. A final order is ordinarily one that ends the litigation or disposes of the entire case. *See* Pa.R.A.P. 341. However, an appeal may be taken as of right from a collateral order of an administrative agency or lower court. *See* Pa.R.A.P. 313(a). A collateral order is "[a]n order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." *See*

Pa.R.A.P. 313(b). To be separable and collateral, the nature of the issue to be reviewed must be such that it can be addressed without the need to analyze the central issue of the case. *See Ben v. Schwartz*, 556 Pa. 475, 481, 729 A.2d 547, 550 (Pa.1999).

¶ 10 In *Ben*, our Supreme Court addressed whether a non-party's, the Bureau of Professional and Occupational Affairs, appeal of the trial court's order directing it to produce its investigative file of the defendant dentist in connection with a dental malpractice lawsuit was a collateral order. Our Supreme Court employed the Third Circuit's approach from *In re: Ford Motor Company*, 110 F.3d 954 (1997), to analyze the separability and irreparable loss prongs.

¶ 11 In *Ford*, the plaintiff in a products-liability action sought access to certain information that Ford claimed was privileged, *i.e.*, attorney-client privilege and the work product doctrine. In addressing the separability prong under the collateral order doctrine, the appeals court considered, and rejected, the plaintiff's argument that a determination of the issue of privilege and work product would implicate the merits of the underlying dispute. The appeals court distinguished the substantive issue raised by the plaintiff's allegations that the vehicle was defectively designed because of a propensity to roll over from the issue of attorney-client privilege.

As we understand the merits of the underlying case, Kelly seeks to show what Ford knew about the alleged rollover propensity of the Bronco II, when it knew about this alleged propensity, and what it did about the alleged propensity. The contents of the documents will certainly shed some light on these questions. However, our resolution of the privilege and work product issues has nothing to do with them. We are not concerned at this juncture about what Ford knew, when it gained this knowledge, or what it did about it. Our inquiry largely involves questions of context—*e.g.*, who prepared the relevant documents, when were they prepared, and what was their purpose. It involves content only insofar as we must ensure that the documents were prepared in certain contexts—*e.g.*, do the documents contain legal advice or do they disclose legal strategies? We are not required, nor will we undertake, to resolve disputed questions of Ford's knowledge of and Ford's actions with respect to the alleged rollover propensity.

*Ford*, 110 F.3d at 958.

¶ 12 Likewise, our Supreme Court determined that the privilege issue raised in *Ben* could be addressed without analyzing the defendant's alleged negligence.

¶ 13 Regarding the irreparable loss prong, our Supreme Court quoted *Ford* for the proposition that "there is no effective means of reviewing after a final judgment an order requiring the production of putatively protected material." *Ben*, at 485, 729 A.2d at 552 (quoting *Ford*, 110 F.3d at 964).

¶ 14 As in *Ben* and *Ford*, the issues Lehman raised, namely, interests of justice and deliberative process privilege, can be addressed without the analysis of the alleged negligence and legal malpractice of Appellees. We find, therefore, that Lehman had demonstrated that the issue of privilege and interests of justice were separate from the merits of the dispute for purposes of the collateral order doctrine. Additionally, the irreparable loss prong had been met because "there is no effective means of reviewing after a final judgment an order requiring the production of putatively protected material." *Ben*, at

485, 729 A.2d at 552 (quoting *Ford,* 110 F.3d at 964).

¶ 15 In *Geniviva v. Frisk,* 555 Pa. 589, 725 A.2d 1209 (Pa.1999), our Supreme Court also adopted the Third Circuit's approach regarding the importance prong of the collateral order doctrine in *Ford.* The Third Circuit observed:

> [I]n this context, importance "does not only refer to general jurisprudential importance. Rather ... an issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by the final judgment rule." *Id.* at 959. Surveying the various cases involving application of the collateral order doctrine, the court, invoking the "apples against oranges" simile, acknowledged that the balancing process involves a comparison of disparate interests. Essentially, however, the interests implicated in any given case must be considered against the costs of piecemeal litigation.

*Geniviva,* at 597–98, 725 A.2d at 1213. "For purposes of defining an order as a collateral order under Rule 313, it is not sufficient that the issue be important to the particular parties. Rather it must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Id.* at 598, 725 A.2d at 1213–14. "The overarching principle governing 'importance' is that, for the purposes of the *Cohen* test, an issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule." *Ben,* at 484, 729 A.2d at 552 (quoting *Ford,* 110 F.3d at 959 (footnote omitted)). Our Supreme Court concluded that resolution of the issue of whether the material sought was privileged implicated rights deeply rooted in public policy and impacted upon individuals other than the parties. The public interest embodied in the asserted privileges "tip the balance in favor of immediate appellate review." *Id.* at 484, 729 A.2d at 552.

¶ 16 Lehman was the former Commissioner of Pennsylvania Department of Corrections and is the current Secretary of the Department of Corrections for the State of Washington. Lehman claimed that the information sought was protected by the deliberative process privilege. As in *Ben,* we find that the importance criterion had been met in this case. Accordingly, the present case is ripe for appellate review.

¶ 17 We now turn our attention to the first issue Lehman raised in this appeal, namely, did the record support the trial court's determination that Lehman's testimony was necessary in the interests of justice where the record contained only a vague reference to how his testimony was remotely related to an issue in the case? Specifically, Lehman alleged that Appellees failed to show how his proposed testimony related to the issues in the complaint, that the information sought through his testimony could be obtained by no other means or that Appellees would be prejudiced without his testimony.

¶ 18 Section 5325(a)(2), 42 Pa.C.S., provides, in pertinent part, "A deposition to obtain testimony or documents or other things in a matter pending in this Commonwealth may be taken outside this Commonwealth ... before a person commissioned by the tribunal of this Commonwealth." Section 5325 continues, "A commission or a letter rogatory shall be issued after notice and application to the court, and on terms that are just and appropriate. It is not requisite to the issuance of a commission or a letter rogatory that the

taking of the deposition in any other manner is impractical or inconvenient, and both a commission and a letter rogatory may be issued in proper cases." 42 Pa. C.S. § 5325(b).

¶ 19 A "court will not issue a commission or letters rogatory merely because it is in the best interests of the petitioner." *See In re Mackarus' Estate,* 431 Pa. 585, 594, 246 A.2d 661, 665–666 (Pa.1968) (quoting *Garrett's Estate,* 335 Pa. 287, 6 A.2d 858 (1939)). A petitioner must show, "the administration of justice will fail" if the testimony is not compelled. *Garrett's Estate,* at 297, 6 A.2d at 862. "The interests of justice in general must require that the commission or letters rogatory be issued." *See Mackarus' Estate,* at 594, 246 A.2d at 666 (citing *Zaremba Estate,* 34 Pa. D. & C.2d 721, 724 (1965)). The petitioner carries the burden to "bring to the attention of the court circumstances to satisfy the court that it is in the interest of justice that the examination should take place." *Mackarus' Estate,* at 596, 246 A.2d at 666. We must consider, therefore, whether the trial court erred in determining that Appellees satisfied the burden that it was in the best interest of justice that the commission or letters be issued in this case.

¶ 20 In their petition for issuance of a commission or a letter rogatory, Appellees identified four causes of action in their complaint, namely, advice regarding written contract amendment, failure to file a claim with the Board of Claims, failure to take action to challenge the findings of the medical examiner and failure to commence proceedings to enjoin the suspension from contracting with DOC. However, the petition did not provide what information Lehman had regarding any of the causes of action. Appellees merely made the allegations, "Secretary Lehman has knowledge of the investigation regarding the suspension of plaintiffs," Appellees' Petition, 5/6/2002, at ¶ 5, and "Secretary Lehman is a witness who has information pertinent to the proceedings. [Appellees] are prejudiced in his defense of this action without the testimony of Joseph Lehman," *id.* at ¶¶ 7–8.

¶ 21 Appellees failed to show that it was in the best interest of justice that the commission or letters be issued in this case. Appellees failed to show how Lehman's testimony related to (1) Appellees' failure to advise PIHS properly regarding the need for an amendment to the contract to cover extra-contractual services; (2) Appellees' failure to file a claim with the Board of Claims in a timely manner; (3) Appellees' failure to challenge the findings of the medical examiner regarding Powell's death; and (4) Appellees' failure to commence proceedings to enjoin the suspensions of PIHS and Hoffman.

¶ 22 Appellees claimed that they were prejudiced without the testimony of Lehman. However, they failed to show how Lehman's failure to testify prejudiced them and how Lehman's knowledge of DOC's investigation and his testimony thereof would bear on the causes of action raised. It is axiomatic that bald assertions, without more, are not sufficient to support a claim for relief.

¶ 23 Appellees' arguments for an issuance of a commission or letter rogatory were, at best, self-serving[3] and not in the best interests of justice. Appellees did not show that the administration of justice would fail if Lehman did not testify. Accordingly, we find that the trial court

---

**3.** In their brief, Appellees stated a desire to question Lehman further regarding these events and other undetermined information.

*See* Appellees' brief at 8. Courts liberally allow discovery, but "fishing expeditions" under the guise of discovery are not tolerated.

erred when it issued a commission to take the testimony of Lehman.

¶ 24 Lehman's second issue on appeal was did the trial court abuse its discretion by granting the petition even though the testimony sought was protected by the deliberative process privilege?

 ¶ 25 Lehman asserted that the order issuing the Commission should be quashed based on the deliberative process privilege. The deliberative process privilege permits the government to withhold documents containing "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." *Commonwealth ex rel. Unified Judicial System v. Vartan,* 557 Pa. 390, 399, 733 A.2d 1258, 1263 (1999) (plurality decision) (citing *Redland Soccer Club, Inc. v. Dept. of the Army of the United States,* 55 F.3d 827, 853 (3d. Cir.1995)).[4] The privilege applies to the *government,* and the government must assert this privilege. *Cf. Vartan,* at 400, 733 A.2d at 1264 ("The deliberative process privilege benefits the public, and not the officials who assert the privilege.") (citation omitted). However, in this case, Lehman had asserted the privilege, and DOC did not assert the privilege on its own behalf.[5] Accordingly, we are constrained to find that the privilege did not apply as raised by Lehman.

¶ 26 Order reversed. Case remanded. Jurisdiction relinquished.

¶ 27 DEL SOLE, P.J. files a Concurring Statement.

**4.** We recognize that *Vartan* was a plurality decision by our Supreme Court and is not binding precedent on this Court. *See, e.g., Commonwealth v. Tilghman,* 543 Pa. 578, 673 A.2d 898, 903 (1996) ("If a *majority* of the Justices of [the Supreme] Court ... join in issuing an opinion, [that] opinion becomes binding precedent on the courts of this Commonwealth.") (emphasis added). However,

DEL SOLE, P.J., Concurring:

¶ 1 I join the Majority in concluding that the issue is appealable and that the trial court erred in concluding that Appellees met their burden to establish the need for the relief sought.

¶ 2 I would not reach the issue of privilege since it is not necessary to resolve this matter.

we find our Supreme Court's reasoning regarding the deliberative process privilege persuasive in determining that only the Commonwealth, and not Lehman, could assert such privilege.

**5.** Attorneys from the Commonwealth of Pennsylvania and DOC represented Lehman on appeal.